IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 97-30646

———————

ORLANDO BARRIOS FRANCISCO,

Plaintiff-Appellant,

versus

CHARLES C. FOTI, JR., Sheriff; ET AL.,

Defendants,

ALLEN VERRETT, Deputy,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-1718-K)

———————

August 26, 1998

Before GARWOOD, JONES and WIENER, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Orlando Barrios-Francisco (Barrios) appeals the magistrate judge's grant of judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) in favor of

———————

[*] Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

defendant-appellee Deputy Sheriff Allen Verrett (Verrett).[1]

**Facts and Proceedings Below**

Barrios, an alien detainee in the custody of the Immigration and Naturalization Service, was incarcerated in a facility under the control of Orleans Parish Sheriff Charles C. Foti, Jr. on May 20, 1995, when a riot occurred at the prison. Barrios and several other inmates allegedly armed themselves with mop handles, defaced prison property, and spread cleaning liquids on the floor. That same day, as a result of his participation in the riot, Barrios was issued a "disciplinary ticket" that charged him with violating prison rules related to rioting and with refusing to obey orders. The disciplinary ticket was issued by Verrett, who also prepared an incident report on the riot, but did not further participate in the disciplinary proceedings against Barrios. On May 22, 1995, a disciplinary hearing was held; Barrios pleaded guilty and was sentenced to forty days' lock down. The events surrounding the issuance of the disciplinary ticket and the disciplinary hearing form the basis of this appeal.

Despite what the disciplinary hearing report states, Barrios denies that he pleaded guilty and denies his guilt.[2] He claims, instead, that he was intimidated into not speaking in his own defense at the hearing. In the court below, Barrios raised several

---

[1] The case was tried to the magistrate judge (and a jury) by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2] Barrios contests his involvement in the riot, and claims that he was caught outside his cell when they were locked down and that he was attempting to remove the cleaning supplies, which had been left out in the open, so that they would not be used in the riot.

state and federal claims against Verrett and several other defendants alleging that: (1) excessive force was used against him, (2) he was falsely charged with participating in the riot, (3) Verrett failed to include exculpatory comments in the Incident Report, (4) he was intimidated into not speaking at the disciplinary hearing, and (5) prison officials falsely indicated that he had pleaded guilty. By the time the case was submitted to the jury, most of the defendants had been dismissed and only four defendants were left in the case.

While deliberating, the jury asked the court:

> "Your Honor, why does question #6 not reflect that the plaintiff's right to due process during the disciplinary hearing could have been violated by the person conducting the hearing, i.e. 'Chief, Warden or division supervisor,' according to page 3 of Disciplinary Procedures?"

The court responded, in agreement with counsel, that the jury could only find the individual defendants named in the interrogatories guilty. Of the four remaining defendants, the jury found only Verrett liable for violating Barrios's due process rights at the disciplinary hearing. In Jury Interrogatory Number 6, the jury found that Verrett "violated the constitutional right of plaintiff, Orlando Barrios Francisco, to due process in connection with the disciplinary proceedings . . . ." Since the jury answered that Verrett had violated the due process rights of Barrios, they answered the explanatory questions in Interrogatory Number 7. The jury expanded upon their answer to Interrogatory 6 and answered that: (1) plaintiff was advised of the charges against him, and (2) plaintiff was not forced to plead guilty, but (3) plaintiff was not

3

allowed to give his version of the events at the hearing. The jury thus found Verrett guilty of violating Barrios's due process rights by preventing Barrios from giving his version of events at the disciplinary hearing, and they awarded Barrios $3000 in compensatory damages. The jury also found, *inter alia*, that Verrett did not file "false disciplinary charges" against Barrios (No. 5). The lower court entered judgment on the verdict in favor of Barrios on April 17, 1997.

A few days after judgment was entered against him, Verrett filed a Rule 50(b) post-trial motion for Judgment as a Matter of Law on April 22, 1997. Verrett argued in his motion that there was no evidence that he participated in, was responsible for, or was even present at the disciplinary hearing,[3] and thus the verdict could not stand. Barrios opposed the motion, contending that Verrett was not entitled to a Rule 50(b) Judgement as a Matter of Law on the grounds urged because he did not make a Rule 50(a) motion on the same grounds at the close of the evidence. Barrios conceded that Verrett had made some Rule 50(a) motions, but argued that these motions urged different grounds for relief than the ultimate Rule 50(b) motion. The lower court agreed with Barrios that Verrett's Rule 50(b) motion urged different grounds for relief from the earlier Rule 50(a) motions and thus did not comply with the strict technical requirements of Rule 50(b). The court, however, noted that the technical requirements of Rule 50(b) are to

---

[3] The prison's Disciplinary Procedures specifically prohibit a charging party from sitting on the disciplinary board.

4

be liberally construed, and, thus, the court found that although the Rule 50(a) motions did not explicitly address the same issue as the Rule 50(b) motion, Verrett had made adequate Rule 50(a) motions addressing the claims that he was reasonably aware that Barrios was asserting against him.  Based on these liberal readings of Rule 50 and Verrett's motions, the court ruled that the requirements of Rule 50(b) were met, and granted the Motion for Judgment as a Matter of Law on the grounds that there was "no evidence that Verrett was present during the disciplinary proceedings" and there was  "no evidence . . . that reasonable and fair minded persons in the exercise of impartial discretion could arrive at the conclusion that Verrett violated plaintiff's due process rights by failing to give him an opportunity to present his version of the events . . . ."  On May 16, 1997, the court vacated the judgment that it had entered in favor of Barrios on April 17, 1997, and entered judgment as a matter of law in favor of Verrett.  Barrios now appeals the court's order of judgment as a matter of law.

## Discussion

Under Rule 50, a party may move that the court enter judgment as a matter of law.  Under Rule 50(a), a defendant may move the court to enter judgment as a matter of law at the close of all the evidence or at any time before the case is submitted to the jury. If the motion is not granted and the case is sent to the jury, a defendant may renew his motion for judgment as a matter of law, pursuant to Rule 50(b), within ten days after the judgement was entered on the jury's verdict.  *See* Fed. R. Civ. P. 50(a) & (b).

5

Because the Rule 50(b) motion is merely a renewal of the prior Rule 50(a) motion, the movant cannot make a Rule 50(b) motion without a predicate Rule 50(a) motion.

As a general rule, if a party does not move for a judgment as a matter of law on a specific issue pursuant to Rule 50(a), then that party is precluded from moving for a Rule 50(b) motion on that issue, and an appeals court cannot review the sufficiency of the evidence on that issue. *See McCann v. Texas City Refining, Inc.*, 984 F.2d 667 (5th Cir. 1993); *see also Hinojosa v. City of Terrell*, 834 F.2d 1223, 1227-28 (5th Cir. 1988) (noting that a party may only base a judgment n.o.v. motion "on a ground that he included in a prior motion for directed verdict at the close of all the evidence."). One exception to this general rule is that if there is plain error, then the trial court may consider a Rule 50(b) motion even if no Rule 50(a) motion was made and grant judgment as a matter of law in order to cure the plain error in the jury's verdict. *See United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 969 (5th Cir. 1998) (holding that because Flintco did not make a Rule 50(a) motion, "the trial court could grant Flintco's motion for judgment as a matter of law only if it found plain error in the jury verdict."). *Flintco* makes clear that a trial court has the power to grant a Rule 50(b) motion in the absence of a Rule 50(a) motion in the limited plain error circumstance. The plain error in *Flintco* was that there was *no evidence* supporting the jury's verdict.

There appears to be some tension between the *Flintco* plain

error standard and the broad pronouncements of other cases that a trial court does not have the power to consider a Rule 50(b) motion that is not preceded by a timely Rule 50(a) motion. *See Allied Bank-West, N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993) (holding that a "district court may not review a motion for JNOV unless the movant has first sought a directed verdict."); *Perricone v. Kansas City S. Ry. Co.*, 704 F.2d 1376, 1380 (5th Cir. 1983) ("Perricone did not move for a directed verdict. He cannot therefore be granted a judgment n.o.v. Perricone's motion for a directed verdict is a prerequisite. . . ."); *Sulmeyer v. Coca-Cola Co.*, 515 F.2d 835, 846 n.17 ("It would be a constitutionally impermissible re-examination of the jury's verdict for the district court to enter judgment n.o.v. on a ground not raised in the motion for directed verdict.").

The language of the *Stein*, *Perricone*, and *Sulmeyer* cases, however, does not control over a plain error case such as *Flintco* or the case before us. In *Sulmeyer*, for example, we were faced with a different scenario; the district court in that case denied the appellant's motion for judgment n.o.v. We affirmed this denial and stated in *dicta* that the district court could not have granted the judgment n.o.v. without a prior directed verdict motion. *See Sulmeyer*, 515 F.2d at 846. But this *dicta* was addressed to a situation where the appellant was trying to raise a new theory that it had not argued at trial after the jury had returned its verdict; *Sulmeyer* did not contemplate the plain error situation. *See id.*

The other two cases, *Stein* and *Perricone*, also did not involve

plain error.  In *Stein*, we concluded that the evidence was sufficient to support the verdict.  *See Stein*, 996 F.2d at 114 ("[R]easonable jurors could have concluded from the evidence that Allied did not give Bolin actual or apparent authority to do anything with the replacement stock but return it to Allied.  The JNOV *therefore* cannot stand"; footnote omitted, emphasis added).  *Stein* also rested on the ground that the theory on which the JNOV was granted was never raised, by pleading or argument or request for jury instructions or otherwise, prior to verdict.  *Id*. at 114-115.  Hence, *Stein*'s discussion of the requirement of a Rule 50(a) predicate motion for a judgment n.o.v. was not addressed to the no evidence/plain error situation.  The same is true of *Perricone*; there we also reversed the district court's conditional grant of a motion for new trial under the more lenient standard of review applicable to grants of a new trial, finding there was evidence to support the verdict.  *See Perricone*, 704 F.2d at 1380-81.  Our brief mention of the procedural requirements for a judgment n.o.v. was again made in the context of a case where there was some evidence.  *See id.* at 1381 (holding that "there was abundant evidence. . . .").

Despite suggestions to the contrary in *Sulmeyer*, *Perricone*, and *Stein*, *Flintco* held district courts can grant Rule 50(b) motions without the prerequisite Rule 50(a) motions, provided the district court is granting the motion in order to avoid a manifest miscarriage of justice under the plain error standard.  We thus apply the *Flintco* plain error standard.  Under this standard, we

8

must first review the record to see if there is any evidence supporting the jury's verdict. If we find there is none, then we can affirm the judgment as a matter of law if doing so will avoid a manifest miscarriage of justice.

Barrios, as appellant, bears the burden of demonstrating that the lower court's grant of judgment as a matter of law was erroneous. Under the plain error standard of review, we cannot review the *sufficiency* of the evidence. *See Karajala v. Johns-Manville Products Corp.*, 523 F.2d 155, 157 (5th Cir. 1975) ("We cannot test the sufficiency of the evidence to support the jury's verdict beyond application of the 'plain error' doctrine in order to prevent a manifest miscarriage of justice."). Thus, Barrios need not bring forth *sufficient* evidence; he must merely bring forth *some* evidence supporting the jury's verdict. Despite this very favorable standard, Barrios has failed to meet his evidentiary burden. He has not directed our attention to any evidence supporting the jury's verdict. Additionally, he has not provided us with a transcript of the proceedings below, and thus we are unable to thoroughly review the record for evidence supporting the jury's verdict.

Barrios instead raises the creative, but legally unsupportable, argument that Verrett's failure to include Barrios's version of events in the disciplinary ticket constitutes a due process violation because it led to a denial of Barrios's right to be heard at the disciplinary hearing. Due process does not require that the charging instrument contain the accused's version of

9

events. And furthermore, even if Barrios were entitled to give his version of events in the charging instrument, it is difficult to see how not doing so could make the drafter of the charging instrument responsible for a separate due process violation that occurred days later at a disciplinary hearing. Assuming *arguendo* that Barrios was prevented from speaking in his own defense at the hearing, this denial of due process is unconnected to what was written in the incident report or the charging instrument, and Verrett could not possibly be liable for the violation.

It is undisputed that Verrett did not in any way participate in the disciplinary hearing at which Barrios's due process rights were allegedly violated. Verrett's involvement was limited to writing an incident report and issuing a disciplinary ticket to Barrios. There is no evidence that Verrett violated Barrios's rights at the disciplinary hearing; and thus, there is no evidence supporting the jury's finding to the contrary. We hold that the jury's verdict constitutes plain error that if not corrected would result in a manifest miscarriage of justice against Verrett.

In the alternative, we hold that Verrett's Rule 50(a) motion was sufficient and laid the necessary predicate for his subsequent Rule 50(b) motion. We have previously held that the strict technical requirements of Rule 50 are to be liberally construed so long as the "purposes of the rule are satisfied." *See Scottish Heritable Trust v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996). The purposes of Rule 50(b) are:

> "[1] to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the

jury returns a verdict contrary to the movant, and [(2)] to alert the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit." *Merwine v. Board of Trustees for State Institutions of Higher Learning*, 754 F.2d 631, 634 (5th Cir. 1985) (quoting *Villanueva v. McInnis*, 723 F.2d 414, 417 (5th Cir. 1984)).

Verrett has satisfied the purposes of the rule.

Verrett made Rule 50(a) motions at the conclusion of Barrios's evidence and at the conclusion of the trial before the issue was submitted to the jury. These Rule 50(a) motions asserted that there was insufficient evidence on all the due process claims that were being brought against him, but Verrett did not include a Rule 50(a) motion specifically addressed to the claim that he violated Barrios's due process rights at the disciplinary hearing. Verrett's failure to include this claim in his Rule 50(a) motion is excusable because he could not have then known that Barrios was asserting this claim against him. Barrios was not then claiming that Verrett *at* the hearing violated his due process rights there, and thus Verrett could not have been expected to move for a judgment as a matter of law on this phantom issue. We hold that Verrett satisfied the purposes of Rule 50 by making a Rule 50(a) motion that addressed all the claims that he was reasonably aware that Barrios was still asserting against him.

Further, at the hearing on Verrett's Rule 50(a) motions, the magistrate judge ruled that *if* (but only if) Verrett had filed a false disciplinary report against Barrios *then* Verrett could in substance be liable for a due process violation occurring at the disciplinary hearing even though, apart from filing the false

11

report, Verrett did not otherwise have anything to do with any due process violation at the hearing. Verrett could thus reasonably understand that the magistrate judge had in effect ruled, prior to the case going to the jury, that Verrett would not be liable for a due process violation at the disciplinary hearing *if* the jury found—as it in fact later did—that he did not file a false disciplinary report. Thus, in substance, Verrett could reasonably understand that no further Rule 50(a) motion was necessary for Verrett as to the deprivation of due process at the hearing claim. For this independent reason, also, Verrett's Rule 50(b) motion cannot be said to be fatally defective for lack of the necessary predicate.

Since we find that Verrett made the proper motions and thereby met the requirements of Rule 50, the plain error standard does not apply and we review the lower court's grant of judgment as a matter of law under the same standard applied by the lower court. Under this standard, we can affirm the lower court's grant of judgment as a matter of law if "considering the evidence with all reasonable inferences and in the light most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict." *H.C. Blackwell Co. v. Kenworth Truck Co.*, 620 F.2d 104, 106 (5th Cir. 1980) (citing *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc)). This standard has been met. In light of the fact that Barrios has not brought forth any evidence indicating that Verrett violated Barrios's due

process rights at the hearing, there is no evidence supporting the jury's verdict.  As such, the grant of judgment as a matter of law was properly granted.

For the foregoing reasons, we affirm the lower court's grant of judgment as a matter of law.

AFFIRMED